1  MARK F. HAZELWOOD, # 136521
   LAURA S. FLYNN, #148511
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111-2584
   Telephone: (415) 981-6630
4  Facsimile: (415) 982-1634

5  Attorneys for Defendant
   BAY AREA RAPID TRANSIT DISTRICT
6
   RICHARD KASHDAN, # 154719
7  LAW OFFICE OF RICHARD KASHDAN
   434 Grove Street
8  San Francisco, CA 94102
   Telephone: (415) 621-4080
9  Facsimile: (415) 621-9554

10 Attorney for Plaintiff
   PATRICIA NASH

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15 PATRICIA NASH,                      )  NO. C 05 5307 VRW
                                       )
16            Plaintiff,               )  **JOINT CASE MANAGEMENT**
                                       )  **STATEMENT AND PROPOSED**
17    vs.                              )  **ORDER**
                                       )
18 BAY AREA RAPID TRANSIT DISTRICT, DOES 1- )
   40,                                 )
19                                     )
              Defendants.              )
20 _____ )

21      The parties to the above-entitled action jointly submit this Case Management Statement and Proposed

22 Order and request the Court to adopt it as its Case Management Order in this case.

23                        **DESCRIPTION OF THE CASE**

24      1.    A brief description of the events underlying the action:

25            Plaintiff Patricia Nash is a 58 year old blind woman who travels with the aid of a white cane.

26 On August 19, 2004, at approximately 10:30 a.m., Ms. Nash was waiting for a train at the 16th Street BARTD

27 Station in San Francisco. She heard a train pull into the station and stop in front of her. She contends she

28 walked forward toward the train and believes she used her white cane in a reasonable manner to verify that the

                                        -1-

J:\1752\sf0186\Pld\JCMS.wpd                                          C 05 5307 VRW

opening she found in front of her had a floor and therefore was a door into a car, and not the gap in between two cars that would not have a floor.   However, she was wrong.  She was actually standing in front of the  gap located between two of the train cars. She walked forward and felt herself falling down to the track way.  She believes that her mistake was caused by metal mechanisms at the front and back of each car such that when two cars are coupled together, there is a broken line of small metal pieces that are about the same height as a car floor and about the distance into the gap where a blind person might probe with their cane when looking for a floor.  Ms. Nash believes that while probing the gap with her cane, she happened to find one of these pieces and thought it was a floor.  She contends that she did not know that these metal pieces existed, and therefore believed that anything she felt with her cane must be the floor of a car.

The operator of the train did not see her fall.  The train drove out of the station, but did not hit plaintiff because she was able to locate the safety area under the lip of the platform.  After the train departed, Ms. Nash felt for the lip of the platform and rose up to ask for help.  She was lifted from the track by other patrons.  The BARTD police report states that Ms. Nash suffered a laceration to the forehead, an abrasion to the right wrist and complained of pain to the right leg.  She was treated on the platform by paramedics and later transported to San Francisco General Hospital.  X-rays taken at the Hospital showed no broken bones.  It took multiple stitches to close a cut on plaintiff's forehead.  Ms. Nash contends she later went to a different medical facility and had pieces of glass removed from one of her eyes.

Plaintiff's claimed special damages include a wage loss claim, clothing allowance, transportation to and from physical therapy, trips to medical appointments, and x-rays.  The total amount of special damages requested is approximately $32,200.

2.    The principal factual issues which the parties dispute:

(a)    To what extent did Ms. Nash cause or contribute to her fall.

(b)    To what extent did BARTD have a duty to install and use between-car barriers that are mounted on the train cars or on station platforms or some other equivalent method, in order to prevent, deter or warn individuals from stepping off the platform between cars. If so, whether BARTD breached that duty.

(c)    Whether directional tiles BARTD has installed prevent, deter or warn individuals from inadvertently stepping off the platform between cars and are compliant with State or

1    Federal law.

2    (d)    The nature and extent of Ms. Nash's physical symptoms and loss of work, as well as

3    emotional distress injuries caused by the train traveling past her.

4    3.    The principal legal issues which the parties dispute:

5    Plaintiff filed an administrative claim which was denied.  On November 22, 2005, plaintiff filed

6 a complaint with the San Francisco Superior Court.  The complaint sets forth a cause of action for Violation of

7 Title II of the American with Disabilities Act ("ADA"), Violation of the Unruh Act, Violation of California Civil

8 Code Section 54.1, Failure to Discharge a Statutory Duty,  Dangerous Condition of Public Property, Strict

9 Products Liability,  and Violation of Civil Code Sections 2100 and 2101.  The prayer of the complaint requests

10 a permanent injunction against BARTD requiring them to install devices or systems to prevent, deter or warn

11 individuals from inadvertently stepping off the platform between cars; a permanent injunction requiring BARTD

12 to install detectable directional textured material, fully conforming to the State Architect's regulations on their

13 station platforms to help people who are blind find the doors to the cars; general damages; special damages;

14 treble damages as allowed by California law; interest; attorneys fees; and costs of suit. Defendant removed the

15 case to this court on December 22, 2005.  An answer to the complaint was filed on December 27, 2005.

16    In regard to the alleged ADA violation, plaintiff claims BARTD violated 42 U.S.C.A. 12142 and 49

17 CFR 37.79 in that it purchased rail vehicles after August of 1990 that were not readily accessible to and usable

18 by individuals with disabilities.  Plaintiff states that one of the BARTD cars that she fell between (#2503) was

19 manufactured in 1996 and that it was not accessible because it lacked a between-car barrier as required by 49

20 CFR 38.63.  That Section states:

21    "Suitable devices or systems shall be provided to prevent, deter or warn individuals from inadvertently

22 stepping off the platform between cars. Acceptable solutions include, but are not limited to, pantograph gates,

23 chains, motion detectors or similar devices."

24    Defendant asserts that it has complied with the subject regulation in that it has mounted black and

25 yellow tactile detection tiles which guide blind customers to door locations. Defendant asserts that the guidance

26 provided by the tactile tiles prevents blind patrons from attempting to enter a train at a location where no door

27 is present.  Plaintiff asserts that these tiles might help blind patrons find open doors, but they do not prevent,

28 deter, or warn blind patrons from inadvertently stepping off the platform between cars, and that the Federal

JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER

    

Transit Administration agrees with plaintiff's interpretation.  The installation of the tiles was funded in part by a Federal Transit Administration grant program for transportation system improvements.  Defendant acknowledges that at the time of the subject accident it was in the process of installing directional tiles in all stations and that the tiles had not yet been installed at the 16th Street Station.  All BARTD stations now have the directional tiles.

In relation to California Civil Code Sections 2100 and 2101, whether Ms. Nash was a "passenger" as defined in those sections at the time of her accident.

4.    The other factual issues *[e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue]* which remain unresolved for the reason stated below and how the parties propose to resolve those issues: Not applicable.

5.    The parties which have not been served and the reasons: Plaintiff will dismiss the Doe defendants who manufactured the cars.  Plaintiff has not yet done discovery to learn the identities of the other Doe defendants.

6.    The additional parties which the below-specified parties intend to join and the intended time frame for such joinder: Not applicable.

7.    The following parties consent to assignment of this case to a United States Magistrate Judge for *[court or jury]* trial: Not applicable.

### ALTERNATIVE DISPUTE RESOLUTION

8.    *[Please indicate the appropriate response(s).]*

'    The case was automatically assigned to Nonbinding Arbitration at filing and will be ready for the hearing by *(date)*_____**.**

'    The parties have filed a Stipulation and Proposed Order Selecting an ADR process *(specify process)***:**_____**.**

'    The parties filed a Notice of Need for ADR Phone Conference and the phone conference was held on or is scheduled for _____.

**X**    The parties have not filed a Stipulation and Proposed Order Selecting an ADR process and the ADR process that the parties jointly request [or a party separately requests] is mediation..

9.    Please indicate any other information regarding ADR process or deadline.

-4-

1

### DISCLOSURES

2    10.    The parties certify that they have made the following disclosures *[list disclosures of persons,*

3    *documents, damage computations and insurance agreements]*: Initial Disclosures to occur on October 20,

4    2006.

5

### DISCOVERY

6    11.    The parties agree to the following discovery plan *[Describe the plan e.g., any limitation on*

7    *the number, duration or subject matter for various kinds of discovery; discovery from experts;*

8    *deadlines for completing discovery]*:   Discovery to be completed pursuant to Federal Rules of Civil

9    Procedure and in accordance with deadlines set forth in Case Management Order.

10

### TRIAL SCHEDULE

11    12.    The parties request a trial date as follows: September 2007

12    13.    The parties expect that the trial will last for the following number of days: 5-8 days.

13

### ADA CASE

14    14.    Plaintiff's Initial Demand:

15    **Architectural Barriers Sought to Be Removed and/or Access to Be Provided:**

16    (1) BARTD should install devices or systems to prevent, deter or warn individuals from

17    inadvertently stepping off the platform between cars of a train.  Plaintiff's preference is that these be physical

18    barriers mounted on the ends of the cars similar to the springs and pantograph gates used in the New York

19    subway.

20    (2) BARTD has installed tactile directional tiles in all stations that indicate where the center four

21    doors of a train will be located.  Plaintiff contends these tiles do not comply with the California State Architect

22    regulations because (a) they are only one foot deep instead of three feet deep; (b) they only indicate the center

23    four doors, whereas the regulation requires that the tiles indicate every door; and (c) BARTD cars nowadays

24    are not stopping as accurately as they used to, and therefore often the tiles are not lined up properly with the

25    doors.

26

27    **Statement of Attorney Fees Incurred to Date:**

28    31 hours @ $200 per hour = $6,200.

JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER

J:\1752\sf0186\Pld\JCMS.wpd                                                                C 05 5307 VRW

15.    Defendant's Response:

**Agreement/Disagreement As to Whether Barriers Exist:**

(i)  BARTD disagrees that there are no devices or systems to prevent, deter or warn individuals from inadvertently stepping off the platform between cars of a train.  Yellow textured rubber tiles have been installed along the entire length of BARTD train platforms in order to warn passengers that they are close to the platform edge. These tiles can be detected with a cane or foot.  Black rubber tiles are used to mark the approximate location of where the center four doors of a train will be located when the train pulls into the station.  In all stations, an extra row of black tiles mark the entrance to the two middle cars of the train.   The tiles are only located at the center four doors based on the fact that BARTD trains are of varying lengths.  The shortest train is three cars long.  If tactile directional tiles were based at all doors, they would not be useful, and might actually be a hazard, as a blind person might assume a door will be present at every location where directional tiles are located.  BARTD believes the safest option is to place directional tiles only in those locations where there will be a car door.

In addition to the directional tiles, BARTD's Station Agents provide assistance to blind patrons upon request and directs them to the appropriate area on the boarding platform.  All stations have white courtesy phones at all levels that connect directly to the Station Agent.  BARTD also provides paratransit services. Service animals are permitted in BARTD stations and trains.  In addition, programs are held wherein the visually impaired are given a tour of the station and provided with instructions as to boarding and exiting the system, as well as information regarding what to do if one falls onto the tracks.  BARTD believes that the combination of all above-referenced efforts to assist blind patrons has been effective.

**Whether Existing Barriers Have Been Removed:**

(ii)  No physical barriers have been mounted on the ends of cars.

**Belief That Removal of Existing Barrier Is Not Readily Achievable:**

(iii)  BARTD believes that the mounting of physical barriers on the cars is not readily achievable.  The factual basis for this belief is as follows:   BARTD is technically unable to implement the specific physical devices identified in Plaintiff's Initial Demand.  It is extremely difficult to fit a between-car barrier in the space between cars because of the large offset at the car corners as a result of the radius of the Y ends of two cars. In addition, the end structure of BARTD cars do not allow for installation of pantograph gates without major

-6-

1    redesign.  The aluminum end structure was not designed to support pantograph gates or other structures which

2    would exert a force into the end wall.

3    BARTD operates a mixed fleet which makes car mounted devices unworkable. Any device which will

4    physically block entry between cars by mating up with a similar device on the opposite car would present

5    substantial maintenance problems and would create large problems in association with the process of making

6    and breaking up trains.   Both pantograph gates and chains require manual attachment and retraction during

7    vehicle coupling and uncoupling.  Currently, coupling and uncoupling is performed by operators from within the

8    vehicle cab, enabling an efficiency which is a factor of BARTD's overall operation.  The efficiency would be

9    diminished by the use of devices which require manual intervention to deploy and retract at each coupling and

10   uncoupling.  Further, such devices would introduce a hazard for personnel working in the BARTD's switching

11   yards in close proximity to third rails and current connectors.

12   There are also a number of problems involved in attaching a physical barrier to the platform.

13   Depending on the design and location of any such barrier, the barrier could constitute a safety hazard i.e.,

14   attractive nuisance or tripping hazard.  In addition, the cars do not always stop in the correct predetermined

15   location and the barrier would have to be sized to handle that reality.

16   Based on all the above, BARTD believes that the mounting of physical barriers between the cars is not

17   readily achievable.

18   Dated: September 26, 2006        _____/S/_____

19                                   MARK F. HAZELWOOD

20   Dated: September 26, 2006        ____/S/_____

21                                   RICHARD KASHDAN

22

23

24

25                              **CASE MANAGEMENT ORDER**

26   The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case

27   Management Order for the case and the parties are ordered to comply with this Order.  In addition the Court

28   orders:

J:\1752\sf0186\Pld\JCMS.wpd                                                                C 05 5307 VRW

a.    Referral of the parties to court or private ADR process:  The parties will be referred to court ordered mediation.

b.    Schedule a further Case Management Conference: A further case management conference will be held on   July 6 , 2007 .

c.    Initial disclosures to be exchanged by:  October 20, 2006 .  Supplemental disclosures to be exchanged by:   March 16, 2007 .

d.    Last day to add parties/claims: November 30, 2006.

e.    Deadline for completing fact discovery:  April 20, 2007   .

f.    Disclosure of experts: April 13, 2007

g.    Supplemental expert disclosure: April 27, 2007.

h.    Deadline for completing expert discovery:  May 25, 2007.

i.    Deadline for hearing motions directed to the merits of the case:   July 6, 2007 .

j.    Date and time for pretrial conference:   August 31, 2007   .

k.    Date and time for trial:  September 10, 2007 .

Dated:  _____                 _____

                                          **UNITED STATES DISTRICT/MAGISTRATE JUDGE**