MARK F. HAZELWOOD, # 136521
LAURA S. FLYNN, #148511
LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
San Francisco, California 94111-2584
Telephone: (415) 981-6630
Facsimile: (415) 982-1634

Attorneys for Defendant
BAY AREA RAPID TRANSIT DISTRICT

RICHARD KASHDAN, # 154719
LAW OFFICE OF RICHARD KASHDAN
434 Grove Street
San Francisco, CA 94102
Telephone: (415) 621-4080
Facsimile: (415) 621-9554

Attorney for Plaintiff
PATRICIA NASH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA NASH,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BAY AREA RAPID TRANSIT DISTRICT, DOES 1-40,<br><br>　　　　　Defendants. | NO. C 05 5307 VRW<br><br>**FURTHER JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>Date:　　　　March 20, 2007<br>Time:　　　　9:00 a.m.<br>Courtroom:　6 -Hon. Vaughn R. Walker |

The parties to the above-entitled action jointly submit this further Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

**DESCRIPTION OF THE CASE**

**I.    Description of Accident**

Plaintiff Patricia Nash (Date of Birth - March 17, 1948) is blind and travels with the aid of a white cane. On August 19, 2004, at approximately 10:30 a.m., Ms. Nash was waiting for a train at the 16th Street BARTD Station in San Francisco. She heard a train pull into the station. According to Ms. Nash's deposition testimony, she heard doors open and proceeded forward and to her left. Ms. Nash believes she used her white

1  cane in a reasonable manner to verify that the opening she found in front of her had a floor and therefore was a
2  door into a car, and not the gap in between two cars that would not have a floor.  Ms. Nash, however, fell into
3  the gap between the fourth and fifth cars on the subject BARTD train.  Ms. Nash alleges that her mistake was
4  brought about by contacting metal mechanisms connecting the two cars that are approximately the same height
5  as a car floor and about the distance into the gap where a blind person might probe with their cane when
6  looking for a floor.  She contends that she did not know that these metal pieces existed, and therefore believed
7  that anything she felt with her cane must be the floor of a car.

8  BARTD train operator Philip Johnson did not see her fall.  The train drove out of the station, but did not
9  run over plaintiff because she was able to locate the safety area under the lip of the platform.  After the train
10 departed, Ms. Nash felt for the lip of the platform and rose up to ask for help.  She was lifted from the track by
11 other patrons.

## II.   **Injuries/Damages**

Ms. Nash suffered a laceration to the forehead, an abrasion to the right wrist and complained of pain to the right leg.  She was treated on the platform by paramedics and later transported to San Francisco General Hospital.  X-rays taken at the Hospital were negative for fracture.  It took multiple stitches to close a cut on plaintiff's forehead.  Ms. Nash was seen at Alameda Hospital on August 22, 2004 and had pieces of glass removed from one of her eyes.  She was diagnosed with a corneal abrasion.

Ms. Nash then had a course of physical therapy at Alameda Hospital from November 5, 2004 to December 3, 2004.  Plaintiff also alleges to have had visits to physicians Dan Kliman, M.D.; Chialin Tsao, M.D.; Jack Stehr, M.D.; and Helen Farzan, counselor.  Ms. Nash claims weight gain from anti-depressant medication taken for emotional distress from accident.

Ms. Nash's claimed medical specials are as follows:

| | |
|---|---|
| San Francisco General Hospital (8/22/04) | $3,291.90 |
| Jack Stehr, M.D. (3/24/05) | $327.00 |
| Alameda Hospital (8/22/04, plus P.T.) | $2,733.66 |
| Dan Kliman, M.D. | $unknown |
| Chialin Tsao, M.D. | $unknown |
| Helen Farzan, M.D. | $unknown |

|   |   |
|---|---|
| Total | $6,352.56 |

At the time of the accident, plaintiff had insurance through Medi-Cal/Medicare. An issue exists as to the amount of medical specials to be claimed at the time of trial, pursuant to <u>Nishihama v. City and County of San Francisco</u> (2001) 93 Cal.App.4th 298, 306.

At the time of the accident, Ms. Nash worked by teaching Braille to students through the California State Department of Rehabilitation. Ms. Nash claims a loss of earning capacity of over $28,000 during 2005 and 2006. Defendant contends this claim is speculative and inconsistent with Ms. Nash's prior earnings. Between 2002 and 2005, Ms. Nash did not earn more than $5,000 for teaching Braille in any given year.

Finally, Ms. Nash's other damages, including transportation to medical appointments, and clothing allowance totaling approximately $600.

**III.    Procedural Status**

An initial case management conference was held on October 3, 2006. At the conference, the court ordered that initial discovery proceed on the issues of the subject accident and Ms. Nash's personal injuries and damages. The court also ordered that plaintiff identify and serve any Doe defendants by the time of the next case management conference.

Since the initial case management conference, the parties have exchanged written discovery, including interrogatories and inspection demands. While the parties are continuing to "meet and confer" on certain inspection demands, it is anticipated that all written discovery for the initial phase of discovery should be completed by the time of the second case management conference on March 20.

BARTD has taken Ms. Nash's deposition. Within the next ten days, plaintiff will complete the depositions of BARTD train operator Philip Johnson; station agent Linda Ramirez; train controller Kimberly Johnson; and system service worker Matt Marvel.

BARTD subpoenaed and has obtained most of plaintiff's medical records. Efforts are still being made to obtain additional employment records from the California State Department of Rehabilitation and counseling records of Helen Farzan.

An inspection of the two BARTD cars that plaintiff fell between has gone forward. Plaintiff's counsel and plaintiff's visual impairment expert attended the inspection.

Defendant BARTD has not yet had Ms. Nash submit to an independent medical examination.

Defendant requests an additional 60 days to complete the IME, most probably with an orthopedic surgeon.

Plaintiff also requests additional limited time to complete investigation/discovery on two issues: 1) clarification of which ends of the subject BARTD cars were coupled together.  This issue relates to the amount of space between the two cars that Ms. Nash would have fallen through; 2) whether BARTD was in the process of replacing "edge detection" tiles at the 16th Street station at the time of the accident.  Ms. Nash has identified a witness who claims that BARTD was replacing edge detection tiles in the 16th Street station a day or two after the accident.  Plaintiff claims that if this was occurring at the time of the accident, there would be an ADA violation.  BARTD maintains that no such replacement was going on at the 16th Street station at the time of the subject accident, and that replacement of edge detection tiles at the 16th Street station did not occur until 2006.  BARTD is in the process of producing records indicating the dates for the tile replacement program for the entire BARTD system.

At the upcoming case management conference, the issue of further discovery should be considered. The principle factual issues which the parties dispute remain:

    a.    To what extent did Ms. Nash cause or contribute to her fall;

    b.    To what extent did BARTD have a duty to install and use between car barriers that are mounted on the train cars or on station platforms or some other equivalent method, in order to prevent, deter or warn individuals from stepping off the platform between cars.  If so, whether BARTD breached that duty.

    c.    Whether directional tiles BARTD has installed prevent, deter or warn individuals from inadvertently stepping off the platform between cars and are compliant with State or Federal law; and

    d.    The nature and extent of Ms. Nash's physical symptoms and loss of work, as well as emotional distress injuries caused by the train traveling past her.

Plaintiff anticipates propounding interrogatories and inspection demands and noticing depositions on the following topics:

    1.    BARTD's history of similar accidents in which blind and visually impaired passengers fall off platforms between cars and any studies performed on how such accidents might be adverted;

    2.    BARTD's history of awareness of any potentially applicable between car barrier requirements under State or Federal law, any studies and/or efforts by BARTD to comply with any potentially applicable requirements;

3. BARTD's history of awareness of California State Architect's Regulations regarding directional tiles on station platforms, and efforts by BARTD to comply with said regulations.

## IV. Principle Legal Issues in Dispute

The parties submit that the principle legal issues remain the same as set forth in the parties initial joint case management statement. In addition, plaintiff does not intend to name any Doe defendants, and hereby will dismiss the cause of action for strict products liability.

### ALTERNATIVE DISPUTE RESOLUTION

The parties have not filed a stipulation and proposed order selecting an ADR process. The ADR process that the parties jointly request is mediation. The parties recommend that an initial mediation go forward at an agreed time concerning Ms. Nash's claim for damages. At a later date, the parties will consider a further mediation on plaintiff's claim for injunctive relief.

### DISCLOSURES

The parties have exchanged documents relating to the initial phase of discovery concerning the subject accident and Ms. Nash's injury and damage claims. Plaintiff has produced all available medical and employment records. BARTD has produced all reports and documents concerning the accident and investigation thereafter.

### DISCOVERY

The parties refer the court to the discussion of discovery set forth above.

### TRIAL SCHEDULE

The parties continue to believe that trial in this matter will last 5-8 days. Setting a trial date will depend on the further schedule of discovery and ADR.

### ADA CASE

The parties submit that the ADA issues in the matter are the same as those set forth in the initial joint case management statement. Plaintiff submits that attorneys fees incurred to date are:

73 hours x $200 per hour = $14,600.

Dated: March 13, 2007            /S/ Mark F. Hazelwood
                                 MARK F. HAZELWOOD

Dated: March 13, 2007     /S/ Richard Kashdan
RICHARD KASHDAN

**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order. In addition the Court orders:

a. Referral of the parties to court or private ADR process: The parties will be referred to court ordered mediation.

b. Schedule a further Case Management Conference: A further case management conference will be held on  August 21 , 2007 .

c. Initial disclosures to be exchanged by: Supplemental disclosures to be exchanged by: May 1, 2007 .

d. Last day to add parties/claims: not applicable.

e. Deadline for completing fact discovery: to be determined.

f. Disclosure of experts: to be determined.

g. Supplemental expert disclosure: to be determined.

h. Deadline for completing expert discovery: to be determined.

i. Deadline for hearing motions directed to the merits of the case: to be determined.

j. Date and time for pretrial conference: to be determined.

k. Date and time for trial: to be determined.

**Dated:** _____  _____
                                          **UNITED STATES DISTRICT/MAGISTRATE JUDGE**