1  MARK F. HAZELWOOD, # 136521
   LAURA S. FLYNN, # 148511
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California  94111-2584
   Telephone: (415) 981-6630
4  Facsimile: (415) 982-1634

5  Attorneys for Defendant
   BAY AREA RAPID TRANSIT DISTRICT

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  PATRICIA NASH,                        )    NO. C 05 5307 VRW
                                          )
12              Plaintiff,                )
                                          )
13       vs.                              )    DEFENDANT BAY AREA RAPID
                                          )    TRANSIT DISTRICT'S NOTICE
14  BAY AREA RAPID TRANSIT DISTRICT, DOES )    OF MOTION AND MOTION FOR
    1- 40,                                )    SUMMARY JUDGMENT, OR IN
15                                        )    THE ALTERNATIVE, PARTIAL
                Defendants.               )    SUMMARY JUDGMENT;
16                                        )    MEMORANDUM OF POINTS
                                          )    AND AUTHORITIES
17                                        )
                                          )    Date:   March 20, 2008
18                                        )    Time:   2:30 p.m.
                                          )    Courtroom:   6 - 17th Floor
19                                        )               Honorable Vaughn
                                          )               R. Walker
20  _____)    Trial Date:   April 14, 2008

21  TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

22       Notice is hereby given that on March 20, 2008 at 2:30 p.m., or as soon thereafter as counsel may

23  be heard by the above entitled court, located at 450 Golden Gate Avenue in San Francisco, defendant

24  Bay Area Rapid Transit District ("BART") will hereby move the court for summary judgment, or

25  alternatively, partial summary judgment on the grounds that there is no genuine issue as to any material

26  fact that moving party is entitled to judgment as a matter of law.  Specifically, summary judgment is

27  proper, pursuant to F.R.C.P. 56(b), because plaintiff cannot establish a violation of Title II of ADA or

28  other related regulations.  Further, the evidence shows that BART's system is safe for blind patrons and

-1-

1  that Ms. Nash cannot prevail on her State law claims.

2       This motion is based upon this notice of motion and motion, the accompanying memorandum of

3  points and authorities, all supporting declarations and exhibits, all pleadings and papers on file in this

4  action, and any other such matters as may be presented to the court at the time of this hearing.

5

6      Dated:  February ___14___, 2008.

7                              LOW, BALL & LYNCH

8

9                     By_____

10                         MARK F. HAZELWOOD
                       LAURA S. FLYNN
                       Attorneys for Defendant

11                         BAY AREA RAPID TRANSIT DISTRICT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT BAY AREA RAPID TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
J:\1752\sf0186\Pld\P-Ntc-MPA.wpd                                     C 05 5307 VRW

1

TABLE OF CONTENTS

2

Page(s)

3   I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.    BACKGROUND         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5          A.    The Accident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6          B.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7          C.    BART Transit Vehicles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8          D.    Solicitation and Procurement of C2-Cars . . . . . . . . . . . . . . . . . . . . 4

9          E.    Steps Taken by BART to Accommodate Visually Impaired Riders . . . . . . . . . . . . . . . 5

10         F.    Prior Incidents Involving Visually Impaired Patrons Falling
                 Between Cars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
11
     III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12
           A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
13
           B.    Plaintiff Cannot Establish a Violation of ADA and Related Regulations . . . . . . . . . . . . 7
14
                 1.    The C2-Cars Were Let out for Bid Prior to the Effective
15                     Date of the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16         C.    Plaintiff Cannot Establish State Architect Regulations Apply
                 to This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
17
                 1.    State Architect Regulations Do Not Apply to
18                     16th Street/Mission Station . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19               2.    California State Architect Regulation 1133b.8.4 Does Not
                       Provide a Basis for Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
20
                 3.    Compliance with the California State Architectural
21                     Requirement Would Not Guarantee Accessibility . . . . . . . . . . . . . . . . . . 12

22         D.    Plaintiff Cannot Establish That BART Has a Mandatory Duty
                 to Install Barriers or Additional Tiles . . . . . . . . . . . . . . . . . . . . . . . . . 14
23
           E.    BART, a Public Entity, Cannot Be Held Liable For Strict
24               Products Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25         F.    Plaintiff Cannot Establish a Dangerous Condition of Public
                 Property as the Cars Do Not Present a Substantial Risk of Injury
26               When a Visually Impaired Person Exercises Due Care . . . . . . . . . . . . . . . . . . . 15

27

28

Page(s)

G.   Plaintiff's Claim For Dangerous Condition of Public Property Is
     Barred by The Affirmative Defense of Design Immunity ........................ 17

     1.   Causal Relationship ................................................. 18

     2.   Discretionary Approval .............................................. 18

     3.   Substantial Evidence Supporting Reasonableness ....................... 19

H.   Plaintiff Cannot Establish That BART Has Violated Cal. Civil
     Code Sections 2100 and 2101 ............................................ 20

I.   Plaintiff Is Not Entitled to Injunctive Relief as She Has Not
     Demonstrated Irreparable Injury ......................................... 20

IV.  CONCLUSION ............................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

Bay Area Rapid Transit Dist. v. Superior Court
    (1996) 46 Cal.App.4th 476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Celotex Corp. v. Catrett
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Chowdhury v. City of Los Angeles
    (1995) 38 Cal.App.4th 1187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

City of Los Angeles v. Lyons
    (1983) 461 U.S. 95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Compton v. City of Santee
    (1993) 12 Cal.App.4th 519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conway v. Standard Ins. Co.
    (1998) 23 F.Supp.2d 1199 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cornette v. Department of Transportation
    (2001) 26 Cal.4th 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Dole Citrus v. State
    (1997) 60 Cal.App.4th 486 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Donald v. Sacramento Valley Bank
    (1989) 209 Cal.App.3d 1183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fuller v. Department of Transportation
    (2001) 89 Cal. App. 4th 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Grenier v. City of Irwindale
    (1997) 57 Cal.App.4th 931 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Haggis v. City of Los Angeles
    (2000) 22 Cal.4th 490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Higgins v. State of California
    (1997) 54 Cal. App.4th 177 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hodgers-Durgin v. De La Vina
    (9th Cir. 1999) 199 F.3d 1037 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Independent Housing Services of San Francisco v. Fillmore Center Associates
    (N.D. 1993) 840 F.Supp.1328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Kinney v. Yerusalim
    (E.D. Pa. 1993) 812 F.Supp. 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

1                                                                                      Page(s)

2   Cases (Cont'd.)

3   Midgett v. Tri-County Metropolitan Transp. Dist. of Oregon
        (9th Cir. 2001) 254 F.3d 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22
4
    Milligan v. Golden Gate, Bridge, Highway and Transp. Dist.
5       (2004) 120 Cal.App.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

6   Moritz v. City of Santa Clara
        (1970) 8 Cal.App. 573 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
7
    Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.
8       (9th Cir. 2000) 210 F.3d 1099 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9   Norman-Bloodsaw v. Lawrence Berkeley Laboratory
        (9th Cir. 1998) 135 F.3d 1260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
10
    O'Toole v. Superior Court
11      (2006) 140 Cal.App.4th 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12  Proctor v. Prince George's Hospital Center
        (1998) 32 F. Supp.2d 830 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
13
    Ramirez v. City of Redondo Beach
14      (1987) 192 Cal.App.3d 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15  Raya v. Maryatt Industries
        (N.D. Cal. 1993) 829 F.Supp. 1169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
16
    Rizzo v. Goode
17      423 U.S. 362 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18  Sampson v. Murray
        (1974) 415 U.S. 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
19
    Stanley v. University of So. Calif.
20      (9th Cir. 1994) 13 F.3d 1313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

21  Thomas v. County of Los Angeles
        (9th Cir. 1992) 978 F.2d 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
22
    Thompson v. Glendale
23      (1976) 61 Cal.App.3d 378 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18-19

24  Tolan v. State of California
        (1979) 100 Cal.App.3d 980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25
    Uyeno v. California
26      (1991) 234 Cal.App.3d 1371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

27  Weinrich v. LA County Metropolitan Transportation Authority
        (9th Cir. 1997) 114 F.3d 976 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
28

1                                                                          Page(s)

2  Cases (Cont'd.)

3  Weinstein v. Cal. Dept. of Transp.
           (2006) 139 Cal.App.4th 52 ................................................. 18
4

5  Statutes

6      Federal

7      Americans With Disabilities Act

8          Title II ................................................................ 1, 3, 7-10
           Title III ................................................................ 11
9
           ADA Accessibility Guidelines section 305.3 ............................ 13
10
           49 CFR
11
           Part 37 ................................................................ 8, 9
12         Part 37.79 ............................................................. 8
           Part 38 ................................................................ 8, 9
13         Part 38.63 ............................................................ 8-10, 14

14     Federal Rules of Civil Procedure

15         § 56(b) ................................................................ 1
           § 56(c) ................................................................ 7
16         § 56(e) ................................................................ 7

17     42 U.S.C.A.

18         § 12132 ................................................................ 7
           § 12142 ................................................................ 8
19

20     State

21     California Civil Code

22         § 51 ................................................................... 3
           § 54.1 ................................................................ 3, 10, 12
23         § 2100 ................................................................ 3, 20
           § 2101 ................................................................ 3, 20
24

25

26

27

28

DEFENDANT BAY AREA RAPID TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
J:\1752\sf0186\Pld\P-Ntc-MPA.wpd                                        C 05 5307 VRW

1                                                                          Page(s)

2        California Government Code

3        § 811.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         § 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15
4        § 815.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14
         § 830 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
5        § 830.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19
         § 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15-17
6        § 840 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16
         § 4450 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
7        § 4500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8

9     Title 24, California Code of Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      Title 24, California Code of Regulations, Chapter 11(B), section 1133.B.8.4. . . . . . . . . . . . . . . . 14
10    Title 24, California Code of Regulations, Chapter 11B . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      Title 24, California Code of Regulations Chapter 5, Article 1, 5-101 . . . . . . . . . . . . . . . . 11
11    Title 24, California Code of Regulations, Div IV, 1133.B.8.4 . . . . . . . . . . . . . . . . . . . . 11
      Title 24, California Code of Regulations, Div IV, 1135B . . . . . . . . . . . . . . . . . . . . . . . . 11
12    Title 24, California Code of Regulations, Division IV, 1134B . . . . . . . . . . . . . . . . . . . . . 11

13

14    Other Authorities

15    4 Cal. Law Revision Com. Reports (1963), p. 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant BAY AREA RAPID TRANSIT DISTRICT ("BART") submits the following memorandum of points and authorities in support of its Motion for Summary Judgment, or alternatively, Partial Summary Judgment.

## I.    INTRODUCTION

Plaintiff Patricia Nash, who is blind, fell between two BART cars while attempting to board a BART train. Ms. Nash has sued BART alleging Federal and State causes of action. Ms. Nash seeks personal injury damages, as well as injunctive relief. Specifically, Ms. Nash seeks to compel BART to add physical barriers to its cars and to supplement existing directional tiles on station platforms. Through this motion, BART requests that summary judgment be granted pursuant to F.R.C.P. 56(b). Specifically, BART asserts that plaintiff cannot establish a violation of Title II of ADA or other related regulations. Further, the evidence shows that BART's system is safe for blind patrons, and that Ms. Nash cannot prevail on her State claims.

## II.    BACKGROUND

### A.    The Accident.

Patricia Nash is a 57-year-old blind woman, who travels with the aid of a white cane. Ms. Nash has been blind since birth. Prior to the subject accident, Ms. Nash was a regular patron of BART. She had participated in several orientation and mobility training courses wherein blind people are trained to safely travel in public. From 1975 to 1982, plaintiff had traveled daily from Oakland to San Francisco on BART for work. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, pp. 14:25-15:11; 20:2-7; 29:3-5). From 2001 up until the day of the accident, she would take BART four days a week. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, pp. 46:24-47:2). Prior to the date of the subject accident, she had not had any accidents or problems, or incurred any injuries while using the BART system. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, p. 48:8-15). If she was unfamiliar with the route she was taking, she would usually ask a BART Station Agent for assistance. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, p. 54:3-16). If she was ever unsure about her positioning on a station platform, she would ask other passengers if she was in the proper position for boarding the train. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, pp. 67:21-68:1.)

1    On the morning of August 19, 2004, plaintiff traveled from her home in the East Bay to San

2    Francisco for a business appointment via BART.  Plaintiff had no problems using BART to get to her

3    appointment. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, pp. 50:21-51:4.)  Ms. Nash

4    then returned to the 16th Station and Mission BART Station for her return trip home.  At approximately

5    10:30 a.m., plaintiff was waiting for a train on the platform at the 16th Street and Mission station.  Ms.

6    Nash has testified at deposition that she cannot recall where she positioned herself. (Exhibit A to

7    Hazelwood Decl., Deposition of Patricia Nash, p. 57:9-25).  She did not ask a Station Agent for

8    assistance.  She did not ask any passengers whether she was in the proper position to board the train.

9    Plaintiff heard a train pull into the station and walked to where she thought she perceived the opening to

10   a door. (Exhibit A to Hazelwood Decl., Deposition of Patricia Nash, p. 68:14-15.)  Ms. Nash would

11   normally probe the area in front of her with a cane to determine if she was entering a car door.  Plaintiff

12   does not have a clear recollection of what she did immediately before the accident.  Ms. Nash, however,

13   did fall between the fourth and fifth cars of a ten-car train (Cars #439 and #2503). (Exhibit A to

14   Hazelwood Decl., Deposition of Patricia Nash, pp. 71:3-76:14.)  The next thing she remembers is

15   standing up in the trackway and calling out, "Excuse me. Could somebody please help me?"  She does

16   not remember falling, finding the safe area underneath the platform, or the train leaving. (Exhibit A to

17   Hazelwood Decl., Deposition of Patricia Nash, pp. 78:16-79:3; 80:16-18).   Plaintiff was lifted from the

18   track by other patrons. She suffered minor injuries.

19       The day after the accident, BART Safety Officer David Sanborn spoke to plaintiff on the phone.

20   At that time, plaintiff stated that she had come down the stairs to the platform at the 16th Street Station as

21   she had done in the past.  She mentioned that she would usually talk to a Station Agent, but on this

22   occasion did not. (Exhibit B to Hazelwood Decl., Deposition of David Sanborn, pp. 18:10-21, 20:6-19)

23   While waiting at her normal spot for a train, she heard an announcement that said the next train was

24   going to be a shorter, six-car train.  She knew she needed to move further north in order to be able to

25   board one of the trains.  She repositioned herself, heard the train stop, and felt for the car doors with her

26   cane using a sideswiping motion. (Exhibit B to Hazelwood Decl., Deposition of David Sanborn, p.

27   18:22-10) Ms. Nash admitted to Mr. Sanborn that she did *not* feel for the floor like she normally would.

28   She stepped forward and fell into the gap between two cars. (Exhibit B to Hazelwood Decl., Deposition

1 │ of David Sanborn, pp. 19:11-13; 22:8-23:11.)

2 │ **B.    Procedural Background**.

3 │ On November 22, 2005, plaintiff filed a complaint with the San Francisco Superior Court.  The

4 │ complaint sets forth the following causes of action: (1) Violation of Title II of the American with

5 │ Disabilities Act ("ADA"); (2) Violation of the Unruh Act - Cal. Civil Code § 51; (3) Violation of Cal.

6 │ Civil Code Section 54.1 - Failure to Prove Equal Access; (4) Failure to Discharge a Statutory Duty - Cal.

7 │ Gov't Code § 815.6; (5) Dangerous Condition of Public Property - Cal. Gov't Code § 835; (6)

8 │ Dangerous Condition Caused by Public Employee - Cal. Gov't Code § 840; (7) Strict Products Liability;

9 │ and (8) Violation of Civil Code Sections 2100 and 2101.

10 │ The prayer of the complaint requests a permanent injunction against BART requiring it to install

11 │ devices or systems to prevent, deter or warn individuals from inadvertently stepping off the platform

12 │ between cars; a permanent injunction requiring BART to install detectable, directional textured material,

13 │ fully conforming to the State Architect's regulations on its station platforms to help people who are blind

14 │ find the doors to the cars; general damages; special damages; treble damages as allowed by law;

15 │ attorney's fees; and costs of suit.

16 │ BART removed the case to the U.S. District Court - Northern District of California on December

17 │ 22, 2005 and filed an answer to the complaint on December 27, 2005.  Trial in this matter is scheduled

18 │ to begin on April 14, 2008.

19 │ **C.    BART Transit Vehicles**.

20 │ BART provides rail transit service covering the greater San Francisco Bay Area.  BART

21 │ passengers board the transit vehicles exclusively from high level platforms with the top of the platform

22 │ at essentially the same height as the vehicle floor.

23 │ The BART system includes 43 stations and three types of revenue vehicles.  There are 137 A-

24 │ Cars, 303 B-Cars, 150 C-Cars and 80 C2-Cars in the 670-car fleet.  A-Cars have a fiberglass operator's

25 │ cab, automatic train operating equipment, and two-way communications system. B-Cars, located in the

26 │ middle of the train, do not have a cab nor do they control the operation of the train.  C-Cars are equipped

27 │ with an operator's compartment, automatic train operating equipment and communications system, as in

28 │ the A-Car, and can function as a lead, middle or trailing car. C2-Cars represent the third generation of

1    BART cars.  The C2-Cars have flip-up seats and vertical handrails on every other seat.  The flip-up

2    seats, which are near each set of doors, were added to allow room for wheelchairs and customers with

3    bicycles.  Blinking red lights near the doors warn hearing-impaired riders that the doors are about to

4    close.  (Declaration of Richard Wieczorek, par. 3 and 4)

5         The number and kinds of cars that constitute a train vary, but an A-Car or C-Car must be at each

6    end of the train to provide the necessary automatic control equipment.  The smallest BART trains are

7    three cars long, while the longest are ten.  (Declaration of Richard Wieczorek, par. 3 and 4)

8         **D.    Solicitation and Procurement of C2-Cars.**

9         When BART procures new transit vehicles, there is a complex and lengthy process.  Initially,

10   BART's in-house licensed engineers prepare specifications which can take six to twelve months to

11   complete.  The specifications are then sent to suppliers of transit vehicle equipment for comments and

12   suggestions. The bid package is then sent to an outside engineering consulting firm for review.  Phase 1

13   of the actual procurement involves a review of the bid package; review of technical specifications;

14   contact with potential car builders; development of financing alternatives; and finalization of

15   procurement documents.  Phase 2 involves the request for proposals, aka the letting of bids; evaluation

16   of the proposals for compliance with the requirements; ranking the proposals; determination of proposals

17   that are in the competitive range; competitive discussions; refinement of requirements; best and final

18   offer; evaluation of best and final offers; and the recommendation of award.  (Declaration of Richard

19   Wieczorek, par. 5)

20        Ms. Nash fell between a C1-Car (#439) and a C2-Car (#2503).  (Declaration of Richard

21   Wieczorek, par. 6)  The C1-Cars were purchased in 1982.  The cars were placed into service during 1988

22   and 1989. (Declaration of Henry Kolesar, par. 5)  Work associated with the preparation of the

23   specifications for the C2-Cars began in or about mid-1989.  On February 12, 1990, BART's Assistant

24   General Manager Jim Gallagher routed the C-2 car specifications for comment around the District.

25   (Declaration of Richard Wieczorek, Exhibit A)  In August of 1990, a copy of the related specifications

26   was sent out for industry review to various car builders.  (Declaration of Richard Wieczorek, Exhibit B)

27        In May of 1991, Booz Allen Hamilton began reviewing the bid package.  Booz Allen Hamilton is

28   a global engineering consulting firm which provides services to the transportation industry.  The

1  estimated cost associated with the support provided by Booz Allen for negotiating the procurement was

2  $225,804. (Declaration of Richard Wieczorek, Exhibit C.) In July 1991, meetings were held with

3  potential car builders to discuss their capabilities, interest, etc. (Declaration of Richard Wieczorek,

4  Exhibit D.)

5       The Contract Book - Technical Provisions for the Procurement of Transit Vehicles was

6  completed in August 1991. (Declaration of Richard Wieczorek, Exhibit E.) Pursuant to a Notice to

7  Suppliers Requesting Proposals, a solicitation for bids was advertised on August 1, 1991. (Declaration

8  of Richard Wieczorek, Exhibit F.) The solicitation for bids stated that all work should be performed in

9  accordance with the laws of the State of California. A pre-proposal conference was held on August 28,

10 1991 to explain the procurement and answer questions of parties interested in contracting for the work.

11 The original proposal due date was October 1, 1991. Changes to the Contract Book were made on

12 October 8, 1991, October 25, 1991, and November 18, 1991. (Declaration of Richard Wieczorek,

13 Exhibit G .) The Contract Proposal due date was changed to December 10, 1991.

14       Proposals were received from three companies on December 10, 1991. Technical proposals were

15 evaluated by a technical evaluation committee and price proposals were evaluated by a separate price

16 evaluation committee. The evaluation of proposals was completed on December 30, 1991. (Declaration

17 of Richard Wieczorek, Exhibit H - Executive Decision Document.) A Request for Best and Final Offer

18 was issued on February 20, 1992. (Declaration of Richard Wieczorek, Exhibit I .) Best and Final Offers

19 were received March 2, 1992 and technical and price evaluations were completed on the same day.

20 (Declaration of Richard Wieczorek, Exhibit H - Executive Decision Document.) On March 17, 1992,

21 the Board of Directors authorized the General Manager to award the Contract to Morrison Knudsen

22 Corporation. (Declaration of Richard Wieczorek, Exhibit H and Exhibit J.) The Contract was executed

23 on May 4, 1992. (Declaration of Richard Wieczorek, Exhibit K - San Francisco Bay Area Rapid Transit

24 District Contract.)

25       E.    **Steps Taken by BART to Accommodate Visually Impaired Riders**.

26       There are a number of features that make BART readily accessible to persons with disabilities

27 including:

28       1.    Textured yellow and black detection edge tiles along the length of BART train platforms

1    warn passengers that they are close to the platform edge. These tiles can be detected with a cane or foot.

2    Yellow tiles run along the length of all BART platforms, and are 24 inches deep. Additional black

3    rubber directional tiles are used to mark the approximate location of train doors when the train pulls into

4    the station. These tiles are 12 inches deep and are located at the four main stop locations on each

5    platform. (Declaration of Richard Wenzel, Exhibits A and B.)

6         2.     Train Operators announce the name of the next station as well as instructions for

7    transfers.

8         3.     Service animals are permitted in BART stations and trains.

9         4.     All stations have public and white courtesy phones at all levels that connect directly to the

10   Station Agent.

11        5.     All cars have designated priority seating near the doors for persons with disabilities.

12        6.     Station Agents are trained and available to help persons with disabilities with elevator

13   and escalator access, tickets, schedules, and other needs.

14        7.     BART has an Accessibility Task Force that advises the BART Board of Directors and

15   staff on disability related issues and advocates on behalf of people with disabilities to make the system

16   accessible to people regardless of disability. All meetings are open to the public. The Force meets on

17   the fourth Thursday of each month. Meeting materials are prepared electronically and in Braille for

18   every meeting and are supplied upon request.

19        8.     BART conducts orientation tours for patrons and groups of students from the California

20   School for the Blind, the Orientation Center for the Blind, East Bay Skills Center and the Oakland

21   School District. The participants receive familiarization training on the layout of a BART station, fare

22   collection equipment, train operations at stations, revenue train layout and station wayside equipment,

23   from BART's safety, station operations and train operations staff. (Declaration of Ikechukwu Nnaji, par.

24   3-8)

25        F.     **Prior Incidents Involving Visually Impaired Patrons Falling Between Cars**.

26        BART keeps records of all reported accidents. BART statistics indicate that prior to plaintiff's

27   accident, there had been only two reported incidents of visually impaired patrons falling through the in-

28   between car gap in the seven prior years. During this time period, there had been over 600 million

1    BART riders.  BART has no records indicating a person has ever been killed or seriously injured as the

2    result of falling between cars from a station platform.  (Declaration of David Sanborn, par. 3)

3    **III.    ARGUMENT**

4           **A.    Standard of Review**.

5           Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories,

6    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

7    material fact the moving party is entitled to judgment as a matter of law."  F.R.C.P. 56(c).  It pierces the

8    pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence for

9    its claims to create a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

10   In order to meet its initial burden, "the moving party must either produce evidence negating an essential

11   element of the nonmoving party's claim or defense or show that the nonmoving party does not have

12   enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire*

13   *& Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, (9th Cir. 2000) 210 F.3d 1099, 1102.

14          In opposing a motion for summary judgment, the adverse party "may not rest upon the mere

15   allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as

16   otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

17   trial."  F.R.C.P. 56(e).  In the absence of such a response, "summary judgment, if appropriate, shall be

18   entered against the adverse party."  *Id.*

19          **B.    Plaintiff Cannot Establish a Violation of ADA and Related Regulations**.

20                 **1.    The C2-Cars Were Let out for Bid Prior to the Effective Date of the ADA**.

21          Title II of the ADA provides that no qualified individual with a disability shall, by reason of such

22   disability, be excluded from participation in or be denied the benefits of services, programs, or activities

23   of a public entity, or be subject to discrimination by an such entity.  42 U.S.C.A. Section 12132.  To

24   prove that a public program or service violates the ADA, plaintiff bears the burden of showing that she is

25   a qualified individual with a disability; that she was excluded from participation in or denied benefits of

26   a public entity's services, programs or activities; and that such discrimination was by reason of her

27   disability.  *Weinrich v. LA County Metropolitan Transportation Authority* (9th Cir. 1997) 114 F.3d 976,

28   978.  When analyzing whether a violation has taken place, a court looks to the Federal standards for

-7-

1   accessibility for transportation vehicles., which are set forth in 49 CFR Part 37 and 38.

2       Plaintiff asserts that BART violated 42 U.S.C.A. 12142 and 49 CFR 37.79 in that it purchased a

3   light rail vehicle after August of 1990 that was not readily accessible to and usable by individuals with

4   disabilities.  Plaintiff alleges that one of the BART cars that she fell between, C2-Car #2503, was

5   manufactured in 1996 and that it was not accessible because it lacked a between-car barrier as required

6   by 49 CFR 38.63[1] which states:

7           Suitable devices or systems shall be provided to prevent, deter, or warn
            individuals from inadvertently stepping off the platform between cars.
8           Acceptable solutions include, but are not limited to, pantograph gates,
            chains, motion detectors or similar devices.
9

10      Section 38.63 is not specific as to the type of system that is required to "prevent, deter, or warn."

11  No published decision has set forth that there needs to be any one specific system.  BART's system,

12  through the use of edge tiles (and now directional tiles); training of staff to help visually impaired riders;

13  and education of the blind community to use BART, has worked.  There has been no history or pattern

14  of between-car-barrier falls.

15      Even if this court considers plaintiff's arguments that BART is required to do something more,

16  BART maintains that Title II does not apply to the two cars that plaintiff fell between.

17      In *Kinney v. Yerusalim*, (E.D. Pa. 1993) 812 F.Supp. 547, disabled individuals filed a class action

18  against the Secretary of Pennsylvania Department of Transportation seeking to compel the city to install

19  curb ramps on all streets that had been resurfaced since the effective date of the ADA.  As part of its

20  ruling on a summary judgment motion, the Court determined whether the City was obligated to install

21  curb ramps on all streets on which the resurfacing was performed after January 26, 1992, the effective

22  date of Title II of the ADA, or on only those streets wherein the resurfacing contracts were "bid" after

23  that date.  After evaluating the language of the relevant regulation, the Court held that the City's

24  obligation to comply with ADA regulations relating to the installation of curb ramps applied only to

25  those resurfacing contracts for which bids were let after the effective date of the ADA.  *Id.* at 552-553.

26  _____

27      [1]The other transit car plaintiff fell between was a C-Car which was manufactured in 1989.
    Plaintiff is not alleging a violation of the ADA in association with the #439 train car, as it was
28  manufactured prior to the effective date of the ADA.

1    The Court noted that resurfacing can require significant planning by the City, including procurement of

2    funds and the solicitation of bids.  Therefore, the Court concluded that the obligations imposed by the

3    regulation applied only to those contracts for which bids were let after January 26, 1992.

4        Title II of the ADA, the statute upon which plaintiff bases her claim for relief, became effective

5    as of January 26, 1992.  *Independent Housing Services of San Francisco v. Fillmore Center Associates*

6    (N.D. 1993) 840 F.Supp.1328, 1343; *Norman-Bloodsaw v. Lawrence Berkeley Laboratory* (9th Cir.

7    1998) 135 F.3d 1260, 1273.  BART does not dispute that Car #2503 was manufactured in 1996.

8    However, the contract for the Car-2 cars (including Car # 2503) was sent out for bid in August of 1991.

9    (Exhibit F to Dec. of Richard Wieczorak.)  Prior to sending the Contract out for bid, BART underwent a

10   lengthy and complex negotiated procurement process which included the following stages: preparation

11   of specifications (six to twelve months), review and feedback relating to specifications (six to nine

12   months); review of the bid package (two weeks); review of technical specifications (two weeks); contact

13   with potential car builders (two weeks); development of financing alternatives (one month); and

14   finalization of procurement documents (month and a half).

15       After the request for proposals, aka the letting of bids, a number of additional steps were taken:

16   evaluation of the proposals for compliance with the requirements; ranking the proposals; determination

17   of proposals that were in the competitive range; competitive discussions; refinement of requirements;

18   best and final offers (BAFOs); evaluation of best and final offers; and a recommendation of award.  The

19   cost associated with support for the negotiated procurement was in the range of $225,804.

20       As indicated above, the contract for the C2 BART car was let out for bid in August of 1991, prior

21   to the January 1992 effective date of Title II.  The evidence establishes that the procurement process

22   required significant planning and expense on BART's behalf.  Based on these facts, Ms. Nash fell

23   between two cars that are not subject to Title II and related regulations.

24       Further, the provisions of 49 C.F.R. parts 37 and 38, and in particular section 38.63 (relating to

25   between-car-barriers), became effective October 7, 1991.  By the date Part 38 became effective, BART

26   had already put the C-2 contract out to bid (August 1, 1991) and set an original proposal due date

27   (October 1, 1991).  Consistent with the reasoning of the *Kinney* case, *supra*, BART should not be

28   required to comply with the accessibility provisions of Part 38 on its C-2 cars after so much design work

1    had already gone into the project.  The court should also not give retroactive effect to the ADA.

2    In *Raya v. Maryatt Industries* (N.D. Cal. 1993) 829 F.Supp. 1169, a plaintiff asserted an ADA

3    claim based on alleged discrimination that took place prior to the effective date of the ADA.  The court

4    noted that the ADA would have to apply retroactively in order for the plaintiff to state a claim.  The

5    court then analyzed whether the ADA could be applied retroactively and determined that retroactive

6    application of the ADA would not be appropriate.  *Id.* at 1171-1175.  See, also *Conway v. Standard Ins.*

7    *Co.* (1998) 23 F.Supp.2d 1199, 1201.

8    In order to hold BART liable for violation of Title II of the ADA, plaintiff must show that BART

9    was in violation of the ADA at some point after its effective date.  Plaintiff cannot establish that BART

10   solicited the purchase of the C2-cars after October 7, 1991 (as to section 38.63) or January 1992 (as to

11   Title II).  To hold BART liable for conduct occurring prior to these dates would be a retroactive

12   application of its provisions and a violation of BART's right to Due Process.  For all of these reasons,

13   plaintiff cannot prevail on her claims of ADA discrimination in the first, second, and third causes of

14   action.

15   **C.    Plaintiff Cannot Establish State Architect Regulations Apply to This Case**.

16          **1.    State Architect Regulations Do Not Apply to 16th Street/Mission Station**.

17   In plaintiff's third cause of action, Ms. Nash alleges through Cal. Civil Code §54.1 that BART

18   failed to provide equal access by not having directional tiles in place on the platform at the 16th

19   Street/Mission Station at the time of Ms. Nash's accident.  The evidence shows that visually impaired

20   riders have always enjoyed equal access on BART.

21   Cal. Civil Code Section 54.1 confers on disabled persons a right of full and equal access to

22   places of public accommodation.  Full and equal access for purposes of this section, in its application to

23   transportation, means access that meets the standards of Title II of the ADA.  A violation of the right of

24   an individual under the ADA also constitutes a violation of Section 54.1.

25   The State of California does provide standards for accessibility, which are set forth in

26   administrative regulations promulgated by the office of the State Architect.  Title 24 of the California

27   Code of Regulations addresses accessibility of buildings.

28   The Title 24 regulations implement Sections 4450 et seq. of the Government Code to ensure that

-10-

1    where State funds are utilized for the construction or alteration of any public building or facility, that the

2    plans and specifications for such buildings and facilities are reviewed by the Division of the State

3    Architect, and certified to be in compliance with the "Access to the Public Buildings by Physically

4    Handicapped Persons Laws" prior to a contract being awarded.  Title 24, Chapter 5, Article 1, section 5-

5    101. The regulations adopted by the State Architect have prospective application after January 1, 1993.

6    The bulk of the regulations set forth in Chapter 11B of Title 24 "Accessibility to Public Buildings,

7    Public Accommodations, Commercial Buildings and Publicly Funded Housing" apply to new buildings,

8    not *existing* buildings.  The regulations relating to accessibility for existing buildings are set forth in

9    Division IV, sections 1134B and 1135B.  The subject regulation cited by plaintiff, section

10   1133.B.8.4,(see plaintiff's complaint, paragraph 31) is <u>not</u> contained within Division IV, which sets forth

11   regulations for existing buildings and was not added to the Building Code until April of 1994.

12        The 16th Street & Mission Station was designed in 1970 and completed in 1972,  prior to the

13   enactment of regulation 1133.B.8.4.  Since the Station was completed prior to the enactment of the

14   regulation, the regulation does not apply as Title 24 regulations only apply to new construction or

15   alterations.  *Independent Housing Services, infra,* 840 F.Supp. at 1351.  *Donald v. Sacramento Valley*

16   *Bank* (1989) 209 Cal.App.3d 1183, 1192.

17        2.    <u>California State Architect Regulation 1133b.8.4 Does Not Provide a Basis for</u>
          <u>Liability</u>.

18

19        Government Code section 4500(b) which relates to contracts for rapid transit equipment or

20   structures; and ready access for individuals with disabilities, states:

21            (b) Notwithstanding any other provision of law, public transit facilities and
             operation, whether operated by or under contract with a public entity, shall
22           meet the applicable standards of Titles II and III of the federal Americans
             with Disabilities Act of 1990 (Public Law 101-336) and the federal
23           regulations adopted pursuant thereto, subject to the exceptions provided in
             that act.  However, if the laws of this state in effect as of December 31,
24           1992, prescribe higher standards than the Americans with Disabilities Act
             of 1990 (Public Law 101-336) and federal regulations adopted pursuant
25           thereto, then those public transit facilities and operations shall meet the
             higher standards.
26
         Plaintiff asserts that BART violated Gov't . Code section 4500(b) in that it is in violation of
27
     Section 1133B.8.4. of the California State Architect's regulations which calls for installation of
28

1 | detectable directional texture at boarding platforms.[2] However, as indicated above, the subject regulation

2 | was not added to the Building Code until April of 1994. Therefore, this more stringent regulation is not

3 | applicable to BART because it was not in effect as of December 31, 1992. As a result, plaintiff cannot

4 | prevail on his claim that BART violated the regulation, and consequently, California Civil Code § 54.1.

5 | **3.     Compliance with the California State Architectural Requirement Would Not**
**Guarantee Accessibility.**

6 |

7 | Assuming that BART is required to comply with Cal. State Arch. Reg. 1133B.8.4, the Court

8 | should not require any related injunctive relief as such an order would not ensure accessibility for blind

9 | passengers and would result in BART violating an ADA Standard relating to wheelchair users.

10 | Section 1133B.8.4 states:

11 | "At transit boarding platforms, the pedestrian access shall be identified
with a detectable direction texture. The texture is to comply with Figure

12 | 11B-23B and shall be 0.1 inch in height that tapers off to 0.04 inch with
bars raised 0.2 inch from the surface. The raised bars shall be 1.3 inches

13 | wide and 3 inches from center-to-center of each bar. This surface shall
differ from adjoining walking surfaces in resiliency or sound on cane

14 | contact. The color of the directional texture shall comply with Section
1133B.8.3. This surface will be placed directly behind the yellow

15 | detectable warning texture specified in Section 1133B.8.3. aligning with
all doors of the transit vehicles, where passengers will embark. The width

16 | of the directional texture shall be equal to the width of the transit vehicle's
door opening. The depth of the texture shall not be less than 36 inches."

17 |

18 | In this case, it is undisputed that BART now has directional tiles at the four main door stop

19 | locations in all 43 stations. Plaintiff, however, seeks to compel BART to install additional tiles at all

20 | possible door stop locations, and to have the tiles be 36 inches deep, not 12 inches deep.

21 | BART installed the tiles at the 4 main door stop locations, in the center of the platform, because

22 | those are the only 4 locations that a train is guaranteed to stop at. Trains vary in size from 3 to 10 cars.

23 | If tiles were present all along the platform, a blind person could incorrectly assume a car door was

24 | present; when in the case of a short train, it may not be. This would be dangerous. (Declaration of

25 | Richard Wenzel, par. 5)

26 |

27 | [2]The directional texture is to be used in conjunction with detectable texture which is designed to
warn blind passengers when they are approaching the platform's edge. The directional texture is

28 | designed to guide blind passengers to the doors of the train.

1    In addition, BART is in the process of procuring additional transit vehicles that may not have the

2    same number of doors per train and that may have door openings inconsistent with directional tiles that

3    have been placed at various stations. (Declaration of Richard Wieczorek, par. 11) For this further

4    reason, there is no basis to compel BART to revise the directional tile program.

5    In addition to adding directional tiles, plaintiff also seeks to compel BART to make the tiles 36

6    inches deep. BART has made the directional tiles 12 inches deep, so that a row of raised tiles do not

7    extend too far into a platform area. Platform areas in certain stations, including 16th Street and Mission,

8    are narrow. To require BART to extend the tiles farther back would result in BART violating an ADA

9    and ABA Guideline Standard for Building and Facilities. For instance, there is limited clearance (57")

10   between the platform wall and the edge of the directional tiles that currently exist at the 16th

11   Street/Mission Station. (Declaration of Richard Wenzel, Exhibit B and C.) If BART had installed 36" of

12   directional tiles, it would leave 21" from the edge of the directional tiles and the wall. ADA and ABA

13   Guidelines require a minimum of 30" "clear floor" access for wheelchair users.[3] (Declaration of Richard

14   Wenzel, Exhibit D) Therefore, people waiting on the platform, there would not be sufficient "clear

15   floor" access as required. The Accessibility Guidelines state that in alterations, where compliance with

16   the applicable requirements is technically infeasible, the alteration shall comply with the requirements to

17   the maximum extent feasible. Section 202.3 - Exception 2. Section 202.3.1 - Prohibited Reduction in

18   Access, states that an alteration that decreases or has the effect of decreasing the accessibility of a

19   building or facility below the requirements for new construction at the time of the alteration is

20   prohibited. (Declaration of Richard Wenzel, Exhibit E.)

21   Any order compelling BART to comply with the State Architect requirement would not ensure

22   improved accessibility. As a result, plaintiff is not entitled to injunctive relief as to the installation of

23   directional tiles.

24

25

26

27   [3]ADA Accessibility Guidelines section 305.3 states "Size. The clear floor or ground space shall

28   be 30 inches (760 mm) minimum by 48 inches (1220 mm) minimum.

DEFENDANT BAY AREA RAPID TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
J:\1752\sfD186\Pld\P-Ntc-MPA.wpd                                                                C 05 5307 VRW

D.    **Plaintiff Cannot Establish That BART Has a Mandatory Duty to Install Barriers or Additional Tiles.**

In her fourth cause of action, plaintiff asserts that BART has breached a mandatory duty, pursuant to Cal. Gov't Code §815.6. Plaintiff specifically claims that BART has a mandatory duty to install devices or systems to prevent, deter or warn individuals from inadvertently stepping off the platform between cars or their trains and to install detectable (directional tiles). (Plaintiff's complaint, par. 37).

Under section 815.6, a public entity may only be held liable for breach of a mandatory duty where: 1) plaintiff pleads a specific enactment which imposes a mandatory, not discretionary duty; 2) the enactment must be intended to protect against the kind of risk or injury suffered by plaintiff; and 3) the breach of a mandatory duty is the proximate cause of plaintiff's injury. Only when all of those elements are met, may a court issue on order to compel performance. Whether an enactment is intended to impose a mandatory duty is a question of interpretation for the court. *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499.

It is anticipated that plaintiff will claim that 49 C.F.R. 38.63 and Title 24 of the Code of Regulations, Chapter 11(B), section 1133.B.8.4. create a mandatory duty. A statute is deemed to impose a mandatory duty on a public entity only if the statute affirmatively imposes the duty and provides implementing guidelines. *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510. If a statute does not require that a particular action be taken, §815.6 does not create a right to sue a public entity.

Here, §38.63 does not set forth a specific way to "prevent, deter, or warn." There are no implementing guidelines. The statute is extremely vague. As set forth above, BART contends it has such a system. Regardless, the statute does not meet the criteria to establish a mandatory duty under §815.6. Similarly, section 1133.B.8.4. does not affirmatively impose a duty. (See Section III (B) above). For these reasons, plaintiff cannot meet all elements of §815.6 and partial summary judgment should be granted as to the fourth cause of action.

E.    **BART, a Public Entity, Cannot Be Held Liable For Strict Products Liability.**

Except as otherwise provided by statute, a public entity "is not liable for an injury, whether that injury arises out of an act or omission of the public entity or a public employee or any person." Cal.

1  Govt. Code Section 815.  Hence, except as required by the federal or state constitutions, liability must be

2  based on a California statute.  *Tolan v. State of California* (1979) 100 Cal.App.3d 980, 986-987.  "Strict

3  products liability is a unique, court-fashioned doctrine. . .  Hence, strict products liability has no place in

4  governmental tort law, directly or my analogy."  *Id.*

5  A "public entity" as used in Government Code Section 815 is defined as including the state, the

6  Regents of the University of California, a county, city, district, public agency and any other political

7  subdivision or public corporation in California.  Gov't Code Section 811.2.

8  BART is a public entity.  There is no California statute which provides that a public entity can be

9  held liable for strict products liability.  As a result, there is no basis for holding BART liable pursuant to

10  a cause of action for strict products liability.  Therefore, partial summary judgment should be granted as

11  to plaintiff's seventh cause of action.

12  **F.    Plaintiff Cannot Establish a Dangerous Condition of Public Property as the Cars Do**
        **Not Present a Substantial Risk of Injury When a Visually Impaired Person**
13        **Exercises Due Care.**

14  Plaintiff's fifth and sixth causes of action allege existence of a dangerous condition of public

15  property, pursuant to the California Gov't Code.  Except as provided by statute, a public entity is liable

16  for injury caused by a dangerous condition of property if the plaintiff establishes that the property was in

17  a dangerous condition at the time of the injury; that the injury was proximately caused by the dangerous

18  condition; that the dangerous conditions created a reasonably foreseeable risk of the kind of injury which

19  was incurred; and either 1) a negligent act of an employee of the public entity created the dangerous

20  condition; or 2) the public entity had notice of the condition a sufficient time prior to the injury to have

21  taken measures to protect against the dangerous condition.  Cal. Govt. Code Section 835.

22  A "dangerous condition" means a condition of property that creates a substantial (as

23  distinguished from a minor, trivial or insignificant) risk of injury when such property is used with due

24  care in a manner in which it is reasonably foreseeable that it will be used.  Cal. Govt. Code Section 830.

25  Liability may ensue only if the property creates a substantial risk of injury when used by the general

26  public with due care since any property can be dangerous if used in a sufficiently abnormal manner.

27  *Milligan v. Golden Gate, Bridge, Highway and Transp. Dist.* (2004) 120 Cal.App.1, 6.  Although it is

28  the general rule that it is a factual question as to whether a given set of facts and circumstances creates a

-15-

1  dangerous condition, the issue may be resolved as a question of law if reasonable minds can come to but

2  one conclusion. *Id.*

3         Here, plaintiff claims that the lack of physical barriers on train cars and/or the lack of directional

4  tiles, at the time of the subject accident, constituted a dangerous condition. Ms. Nash, however, cannot

5  establish all elements of §835.

6         First, plaintiff must prove that the station platform constituted a substantial risk to those using

7  due care. *See Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1197. Here, the evidence

8  shows through Ms. Nash's admission to David Sanborn after the accident, that she did not perform her

9  usual inspection with her cane to determine if she was entering a BART train door. This is the only

10 reason the accident occurred.

11        Further, plaintiff cannot establish that BART had actual or constructive notice prior to the

12 accident. As set forth above, there had been only two possibly similar between-car-barrier falls in the

13 seven years before Ms. Nash's accident. During that time, there had been over 600 million riders on

14 BART. There is no history or pattern giving BART notice of a problem. *See Compton v. City of Santee*

15 (1993) 12 Cal.App.4th 519, 599; *Higgins v. State of California* (1997) 54 Cal. App.4th 177, 187.

16 Because plaintiff cannot establish all elements of section 835, she cannot prevail on the fifth and sixth

17 causes of action and summary judgment should be granted for these further reasons.

18        Further, plaintiff contends that the failure to have directional tiles pursuant to State Architect

19 Regulations, constitutes a dangerous condition. As set forth above, the applicable regulation was created

20 in 1994. The 16th Street & Mission station was completed in 1972. The fact that a design arguably does

21 not conform to a new standard, does not establish the existence of a dangerous condition. *Thompson v.*

22 *City of Glendale* (1976) 61 Cal.App.3d 378, 387; *Dole Citrus v. State* (1997) 60 Cal.App.4th 486, 493-

23 494.

24        Finally, with regard to the sixth cause of action, plaintiff seeks to establish that Does 1-10 (public

25 employees) created a dangerous condition of public property, pursuant to Cal. Gov't Code §840. This

26 case has been pending for over two years. Plaintiff has never sought to amend that complaint to add a

27 Doe Defendant. Given that trial is now set for April 14, 2008, it is simply too late to do so. For this

28 additional reason, partial summary judgment should be granted as to the sixth cause of action.

-16-

1    G.    **Plaintiff's Claim For Dangerous Condition of Public Property Is Barred by The**
2    **Affirmative Defense of Design Immunity.**

3    Plaintiff's fifth and sixth causes of action allege that the underground station platforms and cars

4    were in a dangerous condition at the time of plaintiff's accident because they lacked devices or systems

5    to prevent, deter or warn individuals from inadvertently stepping off the platform between cars of BART

6    trains, and detectable directional textured material on the platforms to help people find the doors to the

7    cars. Even if the court somehow finds that plaintiff can meet the elements of §835. Plaintiff's statutory

8    claim is barred by the affirmative defense of design immunity. Govt. Code section 830.6.

9    Design immunity is codified in Government Code, Section 830.6, which states that:

10        Neither a public entity nor a public employee is liable under this chapter
          for an injury caused by the plan or design of a construction of, or an
11        improvement to, public property where such plan or design has been
          approved in advance of the construction or improvement by the legislative
12        body of the public entity or by some other body or employee exercising
          discretionary authority to give such approval or where such plan or design
13        is prepared in conformity with standards previously so approved, if the
          trial or appellate court determines that there is any substantial evidence
14        upon the basis of which (a) a reasonable public employee could have
          adopted the plan or design or the standards therefor or (b) a reasonable
15        legislative body or other body or employee could have approved the plan
          or design or the standards therefor.
16

17    Cal. Gov't Code § 830.6.

18    The legislative purpose of the defense is stated by the California Law Revision Commission as

19    follows:

20        There should be immunity from liability for the plan or design of public
          construction and improvements where the plan or design has been
21        approved by a governmental agency exercising discretionary authority,
          unless there is no reasonable basis for such approval. While it is proper to
22        hold public entities liable for injuries caused by arbitrary abuses of
          discretionary authority in planning improvements, to permit reexamination
23        in tort litigation by particular discretionary decisions where reasonable
          [persons] may differ on how the discretion should be exercised would
24        create too great a danger of impolitic interference with the freedom of
          decision-making by those public officials to whom the function of making
25        decisions has been vested.

26    4 Cal. Law Revision Com. Reports (1963), p. 823; see *Uyeno v. California* (1991) 234

27    Cal.App.3d 1371, 1376.

28    A public entity claiming design immunity must show the existence of three elements: (1) a causal

DEFENDANT BAY AREA RAPID TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
J:\1752\sf0186\Pld\P-Nte-MPA.wpd                                                                C 05 5307 VRW

1  relationship between the plan and the accident; (2) discretionary approval of the plan prior to

2  construction or subsequent improvement in conformity with those standards previously so approved; and

3  (3) substantial evidence supporting the reasonableness of the design.  In determining the third element,

4  the Court is not concerned with whether the evidence of reasonableness is undisputed; the statute

5  provides immunity when there is substantial evidence of reasonableness, even if contradicted.  *See*

6  *Grenier v. City of Irwindale*, (1997) 57 Cal.App.4th 931, 939 -940; *Bay Area Rapid Transit Dist. v.*

7  *Superior Court* (1996) 46 Cal.App.4th 476, 481-82; and *Weinstein v. Cal. Dept. of Transp.* (2006) 139

8  Cal.App.4th 52, 58-59.

9              **1.    Causal Relationship.**

10             BART asserts that it has immunity for design of its train cars and the design of the platform of

11  the 16th Street & Mission station.  A causal relationship between the plan and the accident, the first

12  element required for a finding of design immunity, is generally established by showing that the alleged

13  injury occurred as the result of the design.  *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-

14  941; *see also Fuller v. Department of Transportation* (2001) 89 Cal. App. 4th 1109, 1114 [holding that a

15  public entity may rely on plaintiff's pleading to establish a necessary element of causation.].  Here, the

16  plaintiff claims that her injuries were the proximate result of the alleged dangerous condition. (Plaintiff's

17  complaint, par. 10, 11 and 19.)  Thus, the first element is established.

18             **2.    Discretionary Approval.**

19             The second element, discretionary approval prior to construction, "simply means approval in

20  advance of construction by the legislative body or officer exercising discretionary authority." *Ramirez v.*

21  *City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526.  See, also *Thompson v. Glendale* (1976) 61

22  Cal.App.3d 378, 384,  wherein Court held that the "employee exercising discretionary authority" under

23  the terms of the statute need not be a licensed engineer, but merely an individual given responsibility for

24  approving plans and designs.

25             As evidenced by the Executive Decision Document attached to the Declaration of Dick

26  Wieczorak as Exhibit H, BART's Board authorized the General Manager to procure the subject C-2

27  transit vehicles.  In addition, on March 17, 1992, the Board approved the award of the Contract to

28  Morrison-Knudsen.  As a result, there are no factual disputes as to the second element.  Further, BART

1  had reputable engineering firms design the station platform at the 16th Street & Mission station.  Outside

2  engineers and BART itself approved the station platform design, signifying its reasonableness.

3  (Declaration of Richard Wieczorek, par. 12 and Exhibit L.)

4            **3.**    <u>**Substantial Evidence Supporting Reasonableness**</u>.

5        As previously indicated, in determining the third element, the Court is not concerned with

6  whether the evidence of reasonableness is undisputed.   The statute provides immunity when there is

7  substantial evidence of reasonableness, even if that evidence is contradicted.

8        The California Supreme Court explains:

9       "The third element of design immunity, the existence of substantial
10  evidence supporting the reasonableness of the adoption of the plan or
   design, must be tried by the court, not the jury.   Section 830.6 makes it
11  quite clear that 'the trial or appellate court' is to determine whether 'there
   is any substantial evidence upon the basis of which (a) a reasonable public
12  employee could have adopted the plan or design or the standards thereof or
   (b) a reasonable legislative body or other body or employee could have
13  approved the plan or design or the standards therefor.'"

14  *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66.

15        The substantial reasonableness of design can be shown simply by a civil engineer's opinion of

16  reasonableness or approval of the plan by competent professionals. *See Grenier,* 57 Cal.App.4th at 941.

17  In *Grenier*, a California appeals court held that design immunity applied to a city drainage and flood

18  control system in which a civil engineer designed the plan, a city engineer approved the plan, and an

19  engineering expert deemed the design reasonable. As detailed below, the engineering and design

20  approval process undertaken by BART is significantly more extensive and substantive than those

21  approved by the courts in other contexts.  *See Moritz v. City of Santa Clara* (1970) 8 Cal.App. 573,

22  (finding that adherence to the Vehicle Code alone was sufficient as a basis for reasonableness);

23  *Thompson v. Glendale,* (1976) 61 Cal.App.3d 378, 383-384.

24        In the present case, the initial specifications for the C2 transit vehicles were drafted by licensed

25  BART engineers.  The specifications were then distributed to various car builders for industry review.

26  BART then retained outside transportation engineering consultants Booz-Allen & Hamilton to provide

27  support for its negotiated procurement of the cars.  Booz-Allen professionals reviewed the bid package

28  and technical specifications.  Potential car builders were contacted and the procurement documents were

-19-

1    finalized. (Declaration of Kolesar, par. 8.)

2         In August 1991, the related Contract Book - Technical Provisions for the Procurement of Transit

3    Vehicles was placed out for bid.  The Notice to Suppliers informed the potential suppliers that all the

4    work was to be performed in accordance with the Laws of the State of California.  Proposals were

5    evaluated by a technical evaluation committee.  The technical evaluation committee was assisted by

6    outside consultants.  The staff completed the evaluation of the best and final offers and determined that

7    Morrison-Knudsen ranked the highest.  (Declaration of Kolesar, par. 8.)  Similarly, professional

8    engineering firms designed and approved the station platform, indicating its' reasonableness.

9    (Declaration of Wieczorek, par. 12 and Exhibit L.)

10        The substantial reasonableness of the C2- Cars design and the design of the 16th Street & Mission

11   station platform is established by the approval of competent licensed engineering professionals both

12   within and outside of the BART agency.  (Declaration of Kolesar, par. 9 and Exhibit F; Declaration of

13   Wieczorek, par. 12 and Exhibit L.)  Accordingly, as a matter of law, BART is entitled to invoke design

14   immunity as a bar to the plaintiff's cause of action for dangerous condition.

15   **H.    Plaintiff Cannot Establish That BART Has Violated Cal. Civil Code Sections 2100
         and 2101**.

16

17        In the fifth cause of action, a further State cause of action, Ms. Nash claims that BART violated

18   Cal. Civil Code §§2100 and 2101.  Under §2100, BART as a common carrier, has a duty of utmost care

19   and diligence for a passenger's safe carriage.  Under §2101, a carrier of persons for reward is bound to

20   provide safe and fit vehicles.

21        In the present case, the evidence shows that there have been only two prior between car barrier

22   accidents in the seven year period prior to the subject accident.  During that time there had been over 600

23   million riders.  This "safety" track record establishes that BART is safe.  For this reason, plaintiff cannot

24   establish common carrier liability in this case.

25   **I.    Plaintiff Is Not Entitled to Injunctive Relief as She Has Not Demonstrated
         Irreparable Injury**.

26

27        Plaintiff seeks a permanent injunction against BART requiring it to install devices or systems to

28   prevent, deter, or warn individuals from inadvertently stepping off the platform between cars and a

-20-

1    permanent injunction requiring BART to install detectable directional textured material, fully

2    conforming to the State Architect's regulations, on its stations' platforms to help people who are blind

3    find the doors to the cars.

4        The basis for injunctive relief has always been irreparable injury and the inadequacy of legal

5    remedies. *Stanley v. University of So. Calif.* (9th Cir. 1994) 13 F.3d 1313, 1320.    The equitable remedy

6    of injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met

7    where there is no showing of any real or immediate threat that the plaintiff will be injured again. *City of*

8    *Los Angeles v. Lyons* (1983) 461 U.S. 95, 110.

9        In the *City of Los Angeles*, the plaintiff brought a civil rights action against the City seeking

10   damages, injunctive relief and declaratory relief.  The plaintiff alleged that he had been illegally choked

11   into unconsciousness by the police during a routine traffic stop.  The Court denied injunctive relief

12   because the plaintiff did not establish a real an immediate threat that he would again be stopped for a

13   traffic violation or for any other offense by an officer who would illegally choke him without any

14   provocation or resistance on his part. *Id.*

15       A similar decision was reached in *Hodgers-Durgin v. De La Vina*, (9th Cir. 1999) 199 F.3d 1037,

16   wherein two motorists who had been stopped by Border Patrol agents sought to maintain a class action

17   against supervisory officials of the Border Patrol seeking declaratory and injunctive relief with respect to

18   the pattern and practice of routinely stopping motorists without reasonable suspicion.  The court

19   determined that the motorists, who had been stopped only once in approximately ten years, did not

20   establish a sufficient likelihood of future injury to warrant equitable relief. *Id.* at 1042-1045.

21       In *Proctor v. Prince George's Hospital Center* (1998) 32 F. Supp.2d 830, a former patient who

22   was deaf sought declaratory judgment, injunctive relief, and damages against a hospital alleging

23   violations of the ADA and Rehabilitation Act for failing to provide sign language interpreters.  The

24   District Court held that the patient was not entitled to injunctive relief under either Act, absent an actual

25   or imminent threat to his rights.

26       In *Midgett v. Tri-County Metropolitan Transp. Dist. of Oregon,* (9th Cir. 2001) 254 F.3d 846, a

27   bus passenger who used a wheelchair sought a permanent injunction compelling a transportation

28   district's compliance with the ADA, plus compensatory and punitive damage. The transportation district

-21-

1   moved for summary judgment on the ADA claims.  As evidence of the need for the requested measures,

2   the plaintiff offered affidavits and declarations from himself and five other riders who used the lift

3   services detailing problems they had experienced with the district's bus lifts over a period of time.

4          The Appellate Court determined that the passenger was not entitled to permanent injunctive

5   relief under the ADA because he had not made a showing that he faced a real or immediate threat of

6   substantial or irreparable injury. *Id.* at 850.

7          Moreover, because the Plaintiff seeks to enjoin a government agency, "his
           case must contend with the well-established rule that the Government has
8          traditionally been granted the widest latitude in the dispatch of its own
           internal affairs." *Rizzo v. Goode* 423 U.S. 362, 378-79, 96 S.Ct. 598, 46
9          L.Ed.2d 561 (1976) (citations and internal quotation marks omitted.).  This
           "well-established rule" bars federal courts from interfering with non-
10         federal government operations in the absence of facts showing an
           immediate threat of substantial injury. *Hodgers-Durgin*, 199 F.3d at 1042-
11         43.  In view of these standards, the district court did not abuse its
           discretion by denying Plaintiff's request for a permanent injunction.

12

13  *Id.* at 850.  The Appellate Court held "it is clear that a plaintiff seeking an injunction against a

14  local or state government must present facts showing a threat of immediate, irreparable harm before a

15  federal court will intervene."  *Midgett,* 254 F.3d at 851.

16         In *Thomas v. County of Los Angeles*, (9th Cir. 1992) 978 F.2d 504, the Court held that when a

17  plaintiff seeks injunctive relief against a state public entity, the request must be weighed against

18  concerns of equity, federalism and comity.  In *Thomas*, the Ninth Circuit cautioned that a strong factual

19  record showing that the misconduct flowed from a policy, plan, or a pervasive pattern, was necessary to

20  support an injunction against a state agency. *Id.* at 508-509.

21         In the present case, plaintiff is requesting a permanent injunction against a multi-district public

22  entity.  However, she has not presented any facts showing a threat of immediate, irreparable harm.  It is

23  highly unlikely plaintiff will suffer the same injury, i.e., injuries caused as a result of falling between two

24  BART cars.  Ms. Nash has been aware of the proper way to utilize her cane in order to ensure she is

25  entering a BART car at a location where a door is present for many years.  She simply did not perform

26  her normal routine on the day of the accident.  In addition, over the past seven years, 600 million

27  patrons, including visually impaired BART riders, have been able to enter the BART cars safely without

28  falling between two cars. (Declaration of David Sanborn, paragraph 3.)  Based on these facts, plaintiff

-22-

1    cannot demonstrate a likelihood of substantial and immediate irreparable injury.[4]

2    **IV.    CONCLUSION**

3         For all of the reasons set forth above, defendant requests that summary judgment be granted.  In

4    the alternative, BART requests summary adjudication as to each and every cause of action.

5

6         Dated:  February  14 , 2008.

7                                 LOW, BALL & LYNCH

8

9                             By

10                             MARK F. HAZELWOOD
11                             LAURA S. FLYNN
                         Attorneys for Defendant
                         BAY AREA RAPID TRANSIT DISTRICT

[4]In addition to the inability to establish immediate irreparable harm, plaintiff has not demonstrated that any potential harm cannot be redressed by a legal remedy as adequate compensatory monetary damages are available. *Sampson v. Murray* (1974) 415 U.S. 61, 90.

-23-